SUTHERLAND v KENNINGTON TRUCK SERVICE, LTD

Docket No. 102290. Argued November 14, 1996 (Calendar No. 15).
Decided May 13, 1997.

Larry G. Sutherland and Donna Sutherland, Ohio residents, brought
an action in the Monroe Circuit Court against Kennington Truck
Service, Ltd., an Ontario corporation, Gregory Zavitz, an Ontario
resident, and others, alleging negligence with respect to a collision
two years and twenty-two days earlier on a Michigan highway. The
court, Michael W. LaBeau, J., applied Ontario's two-year statute of
limitations and granted summary disposition for the defendants,
holding that Michigan had no interest in the litigation because none
of the parties were Michigan citizens. The Court of Appeals, Gribbs,
P.J., and D. E. Holbrook, Jr., and P. S. Teranes, JJ., affirmed in an
unpublished opinion per curiam (Docket No. 152177). The plaintiffs
appeal.

In an opinion by Chief Justice Mallett, joined by Justices
Cavanagh, Boyle, and Weaver, the Supreme Court held:

Michigan law applies.

1. In tort cases presenting choice of law questions, Michigan law
is to apply unless a rational reason to do otherwise is found to
exist. In determining whether a rational reason to displace Michi-
gan law exists, a two-step analysis is undertaken: First, the court
must determine if any foreign jurisdiction has an interest in having
its law applied. If no jurisdiction has such an interest, the presump-
tion that Michigan law will apply cannot be overcome. If a foreign
jurisdiction does have an interest in having its law applied, the
court then must determine if Michigan's interests mandate that
Michigan law be applied, despite the foreign interests.

2. Application of Ohio law would violate the defendants' due
process rights. The only contact Ohio has with the litigation is that
the plaintiffs are Ohio residents. Ontario, likewise, has no interest
in having its statute of limitations apply. To the contrary, according
to Canadian and Ontario law, Ontario has an interest in having
Michigan's statute of limitations applied in this case. The Supreme
Court of Canada has adopted the lex loci delicti rule, and, had the
plaintiffs filed this suit in Ontario, Michigan law would have been
applied. Because no foreign jurisdiction has an interest in having

its law applied in this case, the lex fori presumption is not overcome, and Michigan's interests need not be evaluated. Thus, Michigan's statute of limitations will apply.

Reversed and remanded.

Justice BRICKLEY, joined by Justice RILEY, concurring in part and dissenting in part, stated that the lex fori approach should be adopted in all tort cases involving choice of law issues. As a matter of policy, Michigan courts should apply Michigan law. In cases where a Michigan court has jurisdiction, but Michigan has insufficient contacts to the litigation or the parties so that the application of Michigan law would be arbitrary or unfair, a court should select the law of the most interested jurisdiction, guided by the principles set forth in *Olmstead v Anderson*, 428 Mich 1 (1987).

Justice KELLY took no part in the decision of this case.

*Steinberg, O'Connor, Paton & Burns, P.L.L.C.* (by *Richard L. Steinberg*), *Philo, Atkinson, White, Stephens, Whitaker & Keenan* (by *Harry M. Philo*), *Gallon & Takacs, Co., L.P.A.* (by *Jack Gallon*), and *Bendure & Thomas* (by *Mark R. Bendure*), for the plaintiffs-appellants.

*Braunlich, Russow & Braunlich* (by *William H. Braunlich*) for the defendant.

MALLETT, C.J. In this choice of law case, an Ontario driver and an Ohio driver collided while on a Michigan highway. Plaintiffs filed suit in Michigan two years and twenty-two days after the accident. Both Ohio and Ontario have two-year statutes of limitations, while Michigan has a three-year statute of limitations. The trial court applied Ontario's statute of limitations, holding that Michigan had no interest in the litigation. We reverse and hold that because neither Ohio nor Ontario have an interest in having its law applied, Michigan law will apply.

I

FACTS AND PROCEEDINGS

The facts in this case are fit for a law school choice of law examination. On August 14, 1989, two trucks collided on Interstate 75 in Monroe County, Michigan. The driver of one truck, Larry G. Sutherland, is a resident of Ohio and was operating a truck licensed in Ohio. The driver of the other truck, Gregory Zavitz, is a citizen of Ontario, Canada. He was employed by Kennington Truck Service, an Ontario corporation. Zavitz' truck was owned by Elgin Leasing, which had leased the truck to Canadian Timkin. Both Elgin Leasing and Canadian Timkin are Ontario corporations.

On September 5, 1991, two years and twenty-two days after the accident, Mr. Sutherland and his wife sued defendants in Monroe Circuit Court, alleging negligence. Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that the court should apply either Ohio's or Ontario's statute of limitations. Both of these jurisdictions bar negligence actions filed more than two years after the cause of action arose.[1] In response, plaintiffs argued that the case should be governed by Michigan's three-year statute of limitations.[2]

---

[1] Ohio's statute of limitations is Ohio Rev Code Ann 2305.10. Ontario's is Ch H.8, Ont Rev Stat 206.

[2] MCL 600.5805(8); MSA 27A.5805(8). Because the action accrued within the State of Michigan, Michigan's borrowing statute, MCL 600.5861; MSA 27A.5861, does not apply. MCL 600.5861; MSA 27A.5861 states:

An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply. This amendatory act shall be effective as

The trial court granted the motion for summary disposition. Applying "interest analysis," the court found that Michigan had no interest in the outcome of this litigation because none of the parties are Michigan citizens. The court further found that Ontario had an interest in protecting its citizens from stale claims. On this basis, the court held that Ontario's two-year statute of limitations would apply.

In an unpublished opinion per curiam, the Court of Appeals affirmed.[3] The Court stated:

> The trial court did not err in applying the Ontario statute. The trial court properly conducted an interest analysis to decide which state had the greatest interest in applying its statute of limitation. Although Michigan law once favored application of the law of the forum to procedural matters, such is no longer the case. Recent decisions have criticized the distinction between procedure and substance for conflict of law analysis, recognizing that it has often been used in a manipulative manner. See *Olmstead v Anderson*, 428 Mich 1, 28; 400 NW2d 292 (1987); *Sexton v Ryder Truck Rental, Inc*, 413 Mich 406, 419-423; 320 NW2d 843 (1982); *Mahne v Ford Motor Co*, 900 F2d 83, 87 (CA 6, 1990); *Penwest Development Corp v Dow Chemical Co*, 667 F Supp 436, 442 (ED Mich, 1987); *Farrell v Ford Motor Co*, 199 Mich App 81; 501 NW2d 567 (1993). Neither party in this action is a citizen of this state, both parties are residents of states that have a two-year statute of limitations, and the statute of limitation issue is not an issue involving conduct. We find no error in the trial court's analysis.

We granted leave to appeal on plaintiffs' motion for reconsideration.

---

to all actions hereinafter commenced and all actions heretofor commenced now pending in the trial or appellate courts.

[3] Issued November 3, 1994 (Docket No. 152177).

II

## THE CHOICE OF LAW "REVOLUTION"

Before 1963, American choice of law jurisprudence for tort cases was uniform. All fifty states adhered to the doctrine of lex loci delicti, or the law of the place of the wrong, as espoused by Professor Beale in the First Restatement on Conflicts of Law. Under this doctrine, tort cases were governed by the law of the jurisdiction in which the wrong occurred. Thus, a suit by Michigan citizens who were involved in an accident in another jurisdiction would be governed by the law of the other jurisdiction, even if the suit were brought in this state.[4] The primary advantage of this rule was that conflicts of law questions were easy to resolve, at least in theory. Parties in litigation could usually predict what law would govern the case by determining the state where the last act necessary to create liability occurred.[5]

While all states purported to adhere to the rule of lex loci delicti in the first half of this century, many state courts expressed discomfort with the rigidity of the rule. In order to mitigate what were seen as harsh results, courts developed several "escape devices" to the lex loci delicti rule. For example, a forum court would decline to apply the law of another jurisdiction if that law conflicted with an important public policy of the forum state. Courts would also characterize issues as "procedural," instead of substantive, in order to apply the law of the forum. While the appli-

---

[4] See, e.g., *Kaiser v North*, 292 Mich 49; 289 NW 325 (1939) (applying Ontario's guest statute to a suit by Michigan plaintiffs who were involved in an automobile accident in Ontario).

[5] Scoles & Hay, Conflict of Laws (2d ed), § 17.2, pp 570-572.

cation of these escape devices avoided what were seen as unjust results, they also undermined the predictability of the lex loci delicti rule.[6]

In 1963, New York became the first state to explicitly abandon the traditional approach to conflicts of law. In the seminal case of *Babcock v Jackson*, 12 NY2d 473, 484; 240 NYS2d 743; 191 NE2d 279 (1963), the New York Court of Appeals stated that the traditional rule "fail[ed] to take into account essential policy considerations and objectives . . . ." Instead of adhering to the lex loci delicti rule, the New York Court of Appeals asserted that it would consider the contacts of the tort with each jurisdiction and the interests that each government had in having its law applied.[7]

*Babcock* sparked a "revolution" in conflicts of law jurisprudence. Freed from the monolithic adherence to the traditional rule, state after state revisited its conflicts rules and expressed its frustration with the lex loci delicti doctrine. By 1980, thirty-one states had abandoned the traditional rule. Currently, only ten states still purport to apply the lex loci delicti rule.[8]

---

[6] *Id.*, § 17.7, pp 577-580.

[7] *Babcock, supra* at 482. In *Babcock,* the plaintiff and the defendant were taking a weekend trip together from New York to Ontario. Both parties were residents of New York, and the automobile was garaged and licensed in New York. While in Ontario, the defendant lost control of the car and crashed into a wall.

The plaintiff sued in New York. Under Ontario's guest statute, the suit would have been barred. The New York Court of Appeals, however, stated that Ontario had no interest in seeing its law applied to this case, because all the parties were from New York.

[8] These states are Alabama, Georgia, Kansas, Maryland, New Mexico, North Carolina, South Carolina, Virginia, West Virginia, and Wyoming. Solimine, *The impact of* Babcock v Jackson: *An empirical note,* 56 Alb L R 773 (1993).

While *Babcock* slew the lex loci delicti dragon, it has not produced a consensus on how to deal with conflicts of law questions in the absence of the traditional rule. On lex loci's grave, several competing theories have sprouted. The most prominent of these "modern" theories is "interest analysis," an approach that the late Brainerd Currie has advocated.[9] Under this approach, courts examine the governmental interests of the involved jurisdictions. If the forum state has no interest in having its law applied but the other jurisdiction does, the law of the other jurisdiction should be chosen. If the forum state has an interest and the other does not, the court should choose forum law. If both the forum state and the alternate have an interest in having its law applied and the laws conflict, then the court should apply the forum's law. If neither jurisdiction is interested, the court should again apply forum law.

While several states have adopted interest analysis, it competes for attention with other theories. Under Professor Leflar's "choice influencing considerations," for example, courts ask which jurisdiction has the "better rule of law."[10] The approach that the Second Restatement on the Conflicts of Law proposes, on the other hand, would require courts to determine which jurisdiction has the "most significant relationship" to the tort.[11] At least one state, Kentucky, has adopted a

---

[9] Currie, Selected Essays on the Conflict of Laws, pp 177-187.

[10] Leflar, *Choice-influencing considerations in conflicts law*, 41 NYU L R 267, 282 (1966). Three states, Minnesota, New Hampshire, and Wisconsin have adopted this approach. See *Milkovich v Saari*, 295 Minn 155; 203 NW2d 408 (1973); *Clark v Clark*, 107 NH 351; 222 A2d 205 (1966); *Zelinger v State Sand & Gravel Co*, 38 Wis 2d 98; 156 NW2d 466 (1968).

[11] Restatement Conflicts of Law, 2d, § 145, p 414.

blanket lex fori approach, in which forum law will always be applied.[12]

Proponents of these various approaches have engaged in a vigorous debate over the advantages and disadvantages of each approach. As Justice RILEY has noted, conflicts of law has become a fecund milieu for academic scholarship.[13] While this debate is illuminating, much of it ignores the fact that, in practice, all the modern approaches to conflicts of law are relatively uniform in the results they produce. Professor Borchers has surveyed cases that purport to apply the various modern approaches and concluded that none of the modern approaches differ significantly from the others in three important respects: the percentage of times that courts apply forum law, the percentage of times that plaintiffs recover, or the percentage of times that local parties prevail.[14]

In fact, Professor Borchers' research shows that each of the modern approaches tend to favor significantly the application of forum law. Applying the modern approaches, courts select forum law between approximately fifty-five and seventy-seven percent of the time.[15] This has led one commentator to note:

---

[12] *Foster v Leggett*, 484 SW2d 827 (Ky App, 1972).

[13] *Olmstead v Anderson, supra* at 9, n 6.

[14] Borchers, *The choice-of-law revolution: An empirical study*, 49 Wash & Lee L R 357 (1992).

[15] According to Professor Borchers' research, the Second Restatement's approach results in the application of forum law fifty-five percent of the time, with a margin of error of five percent. Interest analysis results in forum law sixty-three percent of the time, with a margin of error of ten percent. Leflar's approach yields forum law in sixty-five percent of cases, with a margin of error of eleven percent. The lex fori rule yields lex fori in seventy-seven percent of cases, with a twenty-three percent margin of error. When one considers the margins of error, one can conclude that there is no statistically significant difference between the modern

On reading a substantial number of these cases over the years, one has a feeling that the courts may not be doing what they purport to do, that is, employing the modern choice-of-law theories in a neutral way to determine what law applies. Rather, one suspects that courts employing the new theories have a very strong preference for forum law that frequently causes them to manipulate the theories so that they end up applying forum law.[16]

Likewise, Professor Sedler has noted:

[T]he results in actual cases that arise are not likely to differ depending on which particular "modern" approach a court is purportedly applying or on whether a court even commits itself to a particular approach. Moreover, there seems to be little dispute among the commentators that the courts are generally reaching functionally sound and fair results in the cases coming before them for decision.[17]

This preference for forum law is hardly surprising. The tendency toward forum law promotes judicial economy: judges and attorneys are experts in their state's law, but have to expend considerable time and resources to learn another state's law.

Thus, on surveying current conflicts of law jurisprudence, one can reasonably conclude that only two distinct conflicts of law theories actually exist. One, followed by a distinct minority of states, mandates adherence to the lex loci delicti rule. The other, which bears different labels in different states, calls

---

approaches in terms of the application of forum law. *Id.*, n 14 *supra* at 374-375.

[16] McDougal, *The real legacy of* Babcock v Jackson: *Lex fori instead of lex loci delicti and now it's time for a real choice-of-law revolution,* 56 Alb L R 795, 797 (1993).

[17] Sedler, *Choice of law in Michigan: Judicial method and the policy-centered conflict of laws,* 29 Wayne L R 1193, 1198-1199 (1983).

for courts to apply the law of the forum unless impor-
tant policy considerations dictate otherwise.

III

### THE DEVELOPMENT OF MICHIGAN'S CHOICE OF LAW
### JURISPRUDENCE

The evolution of Michigan's choice of law jurispru-
dence has paralleled national trends. In *Abendschein
v Farrell*, 382 Mich 510; 170 NW2d 137 (1969), this
Court declined to join the emerging conflicts of law
movement. In adhering to the doctrine of lex loci
delicti, the Court asserted that

> the quagmire of unanswered and perceivably unanswerable
> questions arising out of the proposed new doctrine appears
> less attractive than our admittedly hard and fast—and occa-
> sionally unjust, it is true—rule that the law of the place of
> the wrong is applied when the forum is a Michigan court.
> [*Id.* at 516.]

Despite adherence to the traditional rule, Michigan
courts continued to employ various "escape devices"
in order to mitigate harsh consequences. See, e.g.,
*Sweeney v Sweeney*, 402 Mich 234; 262 NW2d 625
(1978); *Shaheen v Schoenberger*, 92 Mich App 491;
285 NW2d 343 (1979); *Branyan v Alpena Flying Ser-
vice, Inc*, 65 Mich App 1; 236 NW2d 739 (1975). In
these cases, courts readily found public policy rea-
sons to displace the lex loci delicti with forum law.

A majority of this Court finally abandoned the lex
loci delicti rule in the companion cases of *Sexton v
Ryder Truck Rental* and *Storie v Southfield Leasing*,
*supra*. After exhaustively reviewing the history of
choice of law jurisprudence in Michigan, the Court

noted that the purported advantages of the traditional rule were, in practice, nonexistent. The Court stated:

> Review of the arguments for *lex loci* and the alternate choice-of-law methodologies convinces us that slavish devotion to the rigidities of *lex loci* no longer is either the reasonable policy to follow or the generally accepted law in the United States. As a matter of fact, the courts of Michigan have frequently departed from *lex loci* in individual instances. [*Sexton, supra* at 425.]

While *Sexton* marked the end of the lex loci delicti rule in Michigan, it did not produce a consensus on the appropriate choice of law methodology to be applied. Justice WILLIAMS' opinion[18] expressly declined to embrace any of the "modern" approaches to conflicts of law. *Id.* at 433. Instead, his opinion held that forum law would be applied when Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs and defendants in Michigan courts. *Id.*

Justice LEVIN, on the other hand, wished to create a presumption in favor of forum law for all tort cases involving personal injury or property damage. He stated:

> [W]e should go the distance and declare that Michigan law will apply in all personal injury and property damage actions without regard to whether the plaintiffs and defendants are all Michigan persons unless there is some compelling reason for applying the law of some other jurisdiction, and that merely because the injury arose out of an occurrence in another state is not such a reason. [*Id.* at 442 (LEVIN, J., concurring).]

---

[18] This opinion was also signed by Justices LEVIN and MOODY.

Because *Sexton* did not produce a clear majority, lower courts struggled with its application. Some courts read *Sexton* to apply only to cases in which all the parties are Michigan residents and adhered to the lex loci delicti rule for all other cases.[19] Other courts have read *Sexton* to require a balancing of interests of the various states in the event that one of the parties is not from Michigan.[20]

This Court clarified much of the confusion surrounding *Sexton* in *Olmstead v Anderson, supra.* *Olmstead* involved an automobile accident in Wisconsin between a Michigan driver and two Minnesota residents. The plaintiff, the administratrix of the estates of the deceased Minnesota residents, originally filed suit in Minnesota, but this suit was dismissed for improper venue and lack of jurisdiction. The plaintiff then filed suit in Michigan.

The choice of law issue was vitally important in *Olmstead,* because Wisconsin law at the time limited recovery in wrongful death cases to $25,000. Neither Michigan nor Minnesota limited recoverable damages at that time. In addressing the choice of law question, this Court began with the presumption that Michigan law would apply. *Id.* at 24, 30-31. The Court then asked whether "reason requires that foreign law supersede the law of this state." *Id.* at 24.

In analyzing whether a rational justification for displacing Michigan law existed, the Court in *Olmstead*

---

[19] See, e.g., *Severine v Ford Aerospace & Communications Corp*, 118 Mich App 769; 325 NW2d 572 (1982); *Hamann v American Motors Corp*, 131 Mich App 605; 345 NW2d 699 (1983).

[20] See, e.g., *Bennett v Enstrom Helicopter Corp (On Reconsideration)*, 686 F2d 406 (CA 6, 1982); *Vogh v American Int'l Rent-A-Car, Inc*, 134 Mich App 362, 368; 350 NW2d 882 (1984); *Hampshire v Ford Motor Co*, 155 Mich App 143; 399 NW2d 36 (1986).

reviewed Wisconsin's interests in having its law applied. The Court noted that neither party was a resident of Wisconsin, and that Wisconsin therefore did not have any interest in seeing its limitation of damages provision applied to this case. The Court also noted that because the insurance companies of both parties knew of the possibility of unlimited liability, no unfairness would result from the application of Michigan law. *Id.* at 25. Because Wisconsin did not have an interest in having its law applied, the lex fori presumption was not overcome, and the Court did not undertake an analysis of Michigan's interests.

IV

ANALYSIS

*Olmstead* provides the analytical framework for deciding this case. That is, we will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. *Id.* at 24, 29-30.

Ohio and Ontario are the only two foreign jurisdictions that potentially have an interest in having their law applied in this case. Ohio, where the plaintiffs

reside, has a two-year statute of limitations for these types of actions.[21]

However, a court could not apply Ohio law to this case without violating the defendants' due process rights. As Justice Brennan stated in *Allstate Ins v Hague*, 449 US 302, 313; 101 S Ct 633; 66 L Ed 2d 521 (1981), in order for a court to choose a state's law, "[the] State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."[22] In this case, the only contact that Ohio has with this litigation is that plaintiffs are Ohio residents. The United States Supreme Court has stated that the plaintiff's residence, with nothing more, is insufficient to support the choice of a state's law. *Home Ins Co v Dick*, 281 US 397, 408; 50 S Ct 338; 74 L Ed 926 (1930); see also *John Hancock Mut Life Ins Co v Yates*, 299 US 178; 57 S Ct 129; 81 L Ed 106 (1936).

---

[21] Ohio Rev Code Ann 2305.10.

[22] The "significant contacts" required for choice of law purposes is similar to the "minimum contacts" required for jurisdictional purposes. That is, *International Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945), holds that a state may not exercise jurisdiction over a defendant unless the defendant and state have "minimum contacts" so that "traditional notions of fair play and substantial justice" are not offended.

The United States Supreme Court has never determined the relationship between the "significant" contacts required for choice of law and "minimum" contacts required for jurisdiction. Scoles & Hay, n 5 *supra*, §§ 3.28-3.29, pp 96-101; Martin, *Personal jurisdiction and choice of law*, 78 Mich L R 872 (1980). However, at least one commentator has argued that the standards should be the same. *Id.* Intuitively, at least as many contacts should be required for choice of law purposes as for jurisdictional purposes. It would make little sense to say that state X does not have enough contacts to exercise jurisdiction, but yet allow state Y to apply state X's law.

Because Ohio does not have an interest in seeing the court apply its law, Ontario is the only remaining candidate. Ontario, like Ohio, has a two-year statute of limitations.[23] Defendants claim that because Ontario law would benefit the Ontario defendants by barring the claim, Ontario has an interest in having its statute of limitations applied. Certainly, one purpose of a statute of limitations is to protect defendants from stale claims. We do not agree, however, that Ontario has an interest in protecting the defendants from stale claims in this situation. In fact, according to Canadian and Ontario law, Ontario has an interest in having Michigan's statute of limitations applied in this case.

In the companion cases of *Tolofson v Jensen* and *Lucas v Gagnon*, 120 DLR4th 289 (1994), the Supreme Court of Canada adopted the lex loci delicti rule and held that Canadian courts must apply the substantive law of the jurisdiction where the tort occurred.[24] The court also stated that statutes of limitation are substantive, not procedural, for choice of law purposes. *Tolofson, supra.* Thus, under *Tolofson*, Canadian courts must apply the statute of limitations of the jurisdiction in which the tort occurred.

---

[23] Ch H.8, Ont Rev Stat 206.

[24] The Supreme Court of Canada has superintending control over the interpretation of all federal and provincial laws. *Tolofson, supra.* Thus, choice of law jurisprudence is uniform throughout the provinces. This stands in sharp contrast to the American experience, where the United States Supreme Court has shown a deep reluctance to federalize choice of law. See *Sun Oil Co v Wortman*, 486 US 717; 108 S Ct 2117; 100 L Ed 2d 743 (1988).

Interestingly, Canadian choice of law jurisprudence is moving in exactly the opposite direction from American choice of law jurisprudence. While American courts are moving from a lex loci delicti standard to lex fori, Canadian courts have moved from lex fori to lex loci delicti. See *Tolofson, supra.*

*Tolofson* involves residents of British Columbia who were injured in an automobile accident in Saskatchewan, and thus does not present an international choice of law problem. Justice La Forest, speaking for the court, noted that an exception to the lex loci delicti rule may exist in international tort litigation if application of the law of a foreign country "could give rise to [an] injustice." *Id.* at 308. Justice La Forest continued, however, to state that he could only "imagine few cases where this would be necessary." *Id.*

We seriously doubt that an Ontario court would find that the application of Michigan's three-year statute of limitations in this case would "give rise to injustice." Certainly, no Ontario court has expressed qualms about applying American law. In *Ostronski v Global Upholstery Co*, 1995 Ont C J LEXIS 4668, for example, the Ontario Court of Justice applied Pennsylvania's statute of limitations to a tort suit commenced in Ontario.[25] Ontario's courts have even applied American law when that law is detrimental to Canadian litigants. See *In re Hanlan*, 1996 Ont C A LEXIS 754, rev'g *Hanlan v Sernesky*, 1996 Ont C J LEXIS 2538.

Thus, had plaintiffs filed this suit in Ontario, Ontario's courts would have applied Michigan's three-year statute of limitations.[26] Because even Ontario

---

[25] See also *Abb Power Generation v CSX Transportation*, 1996 Ont C J LEXIS 1029 (stating that Ohio tort law will apply to a suit commenced in Ontario).

[26] In looking at Ontario's statute of limitations, we in no way intend to breathe life into the doctrine of renvoi. Under renvoi, once a court determines that it will apply the law of another jurisdiction, it applies the entire law of that jurisdiction, including its choice of law rules. Thus, the choice of law rules of the chosen state could point the court to a third state or

courts would not allow the defendants to escape this claim through application of Ontario law, we do not see how Ontario can have an interest in having Michigan courts apply Ontario law.

Therefore, no foreign state has an interest in having its law applied to this case. The lex fori presumption is not overcome, and we need not evaluate Michigan's interests. *Olmstead* at 30. Michigan's three-year statute of limitations will apply to this case.

V

For these reasons, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.

CAVANAGH, BOYLE, and WEAVER, JJ., concurred with MALLETT, C.J.

BRICKLEY, J. (*concurring in part and dissenting in part*). I concur in the result reached by the majority. However, I write separately to express my view that the time has come for this state to abandon the interest-analysis-based approach detailed by the majority. Rather, I would adopt a lex fori approach to choice of law questions.

I am troubled by the choice of law analysis defined by the majority. It describes this state's choice of law rules as:

---

back to the forum state. Renvoi creates the potential for circular analysis and has been criticized by American courts. See, e.g., *Haumschild v Continental Casualty Co*, 7 Wis 2d 130, 142; 95 NW2d 814 (1959).

In this case, we do not engage in renvoi because we decline to apply any of Ontario's law. We look at Ontario's choice of law rules merely to determine Ontario's interests.

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. [*Ante* at 286, citing *Olmstead v Anderson*, 428 Mich 1, 24, 29-30; 400 NW2d 292 (1987).]

This two-part test requires lower courts to engage in the speculative endeavor of ascertaining another jurisdiction's interests. The majority does this by examining two factors:[1] 1) the constitutionality of applying a foreign jurisdiction's law, *ante* at 287, and 2) the foreign jurisdiction's choice of law rules, *id.* at 288. However, each of these factors are likely to cause confusion and inconsistent outcomes.

Under the first factor, the majority, despite recognizing that choice of law and jurisdiction are doctrinally distinct, fails to clarify the distinction between the minimum-contacts test for personal jurisdiction with the constitutional limits on choice of law. *Id.* at 287, n 22. As cited by the majority, the United States Supreme Court required that a forum state have sufficient contacts to a case so that the application of its law is "neither arbitrary nor fundamentally unfair." *Allstate Ins v Hague*, 449 US 302, 313; 101 S Ct 633; 66 L Ed 2d 521 (1981). Though *Allstate* did discuss

---

[1] The majority fails to specify whether there are other appropriate methods of analyzing a state's interest. Indeed, *Olmstead* identified the interests of the parties with their citizenship and did not explore any of the methods used by the majority. *Id.* at 28 (finding that Wisconsin had no interest because none of the parties was a resident of that state). Thus, the proper method for analyzing interests remains unclear.

choice of law in terms of contacts and fundamental fairness, it did not state that this test was identical to the analysis for determining personal jurisdiction. Further, it has been recognized that choice of law and jurisdiction are fundamentally distinct concepts.[2] Indeed, the analysis for determining jurisdiction is concerned with the court's contacts with a party, while the test for choice of law examines contacts with a party and the occurrence or transaction giving rise to the litigation. *Id.* at 308, 313. The majority's constitutional analysis oversimplifies this area of the law.

The majority's second factor demonstrates how its concern with the interests of other jurisdictions will result in confusion. To ascertain the interest of Ontario, the majority examines the choice of law rules of Ontario, and determines that an Ontario court would apply Michigan law if this case were before it. *Ante* at 288-290. Therefore, the majority concludes that Ontario has no interest in this litigation. *Id.* Thus, the majority requires the courts of this state to decipher and apply the choice of law rules of potentially every jurisdiction in the country, and possibly the world, before it can determine which law to apply. This is simply too great a burden. The potential for confusion and error is clear. The bench and bar of this state are experts in Michigan law. To require expertise in the choice of law rules of any number of foreign jurisdictions is certain to lead to widespread confusion. These cases, and the appeals that they will

---

[2] See Brown, *The ideologies of forum shopping—Why doesn't a conservative court protect defendants*, 71 NC L R 649, 700-701 (1993).

most surely generate, will tax the resources of this state's judiciary on all levels.

Nonetheless, the majority's analysis is consistent with this state's current choice of law rules. This leads me to conclude that the problems in the majority's opinion stem from this underlying methodology. The most fundamental flaw in this approach to choice of law is that it requires the courts of this state to choose between the laws of Michigan and those of foreign jurisdictions. As a matter of policy, the courts of this state should apply Michigan law. The application of foreign law requires a Michigan court to interpret and apply that law as if the court was sitting in that foreign jurisdiction. State courts should not presume to speak for other jurisdictions in this manner. Further, the majority's analysis requires Michigan courts to apply the law of another jurisdiction in certain cases. However, before a court can do this, it must first expressly refuse to apply the laws of this state.[3] This refusal ignores and defeats the express will of the Legislature. Clearly, the courts of this state should avoid this outcome.[4]

Moreover, there is an increased likelihood of error when Michigan courts attempt to rule on foreign laws.[5] The courts of this state must examine foreign laws in both phases of the majority's analysis. In the

[3] See Weinberg, *Against comity*, 80 Geo L J 53, 70 (1991).

[4] It should be noted that choosing another jurisdiction's law is fundamentally different from adopting another state's approach to a given issue. In the choice of law context, a Michigan court acts as if it is a court in a foreign jurisdiction and purports to speak on that jurisdiction's laws. However, when a Michigan court finds another state's approach on an issue persuasive and adopts it, the court merely refines Michigan law. Thus, its holding only addresses the laws of this state.

[5] This is especially true when the law is from a foreign country, such as the Ontario choice of law rules examined by the majority.

first phase, Michigan courts are apparently required to interpret and apply foreign choice of law rules and to examine the interests of a foreign jurisdiction by determining the purpose or intent of its law. In this case, the majority determines that Ontario would apply Michigan law.[6] In the second phase of the majority's analysis, a Michigan court would have to apply foreign law if a jurisdiction is found to have sufficient interests to displace Michigan law. As previously discussed, I feel that Michigan courts should avoid deciding cases through the application of foreign laws.

A second flaw with this state's choice of law methodology is that it is unpredictable. *Olmstead* sought to create a system that would allow parties to accurately forecast the law that governs any given litigation. However, this case shows that this has not been the result. Rather, these parties have been delayed for over five years as the courts of this state have struggled to determine the governing law.[7] Further, the majority does not make this system any more predictable. Instead, it fails to define a systematic approach for determining the interests of other jurisdictions. It examines two factors in determining that neither Ontario nor Ohio can be interested in this case. Yet, it is far from clear that these are the only factors to be considered.[8] Indeed, the crucial factor in *Olmstead*

---

[6] See Cox, *Razing conflict facades to build better jurisdiction theory: The foundation—There is no law but forum law*, 28 Val U L R 1, 42 (1993) (arguing that courts have no authority to interpret the intentions of foreign legislatures).

[7] The original complaint was filed on September 5, 1991.

[8] The majority does not even apply these factors to both jurisdictions. Rather, it applies the constitutional factor to eliminate the possible application of Ohio law, and the choice of law rule inquiry to determine that

was the citizenship of the parties.[9] By undertaking its approach, the majority removes any certainty regarding what factors will be applied to determine if a state has an interest.

Moreover, the second part of the majority's test requires a court to weigh any foreign interests against those of Michigan. However, by finding that no other state has an interest, the majority avoids explaining how competing interests are to be weighed. Future litigants have no way to predict the methodology, let alone the outcome, when a court is required to weigh interests. Thus, under the majority's interpretation of the current choice of law system, parties have little certainty concerning the law that will be applied to their dispute.

The third flaw in this choice of law approach is that it allows hidden, pro-forum manipulation. The majority recognizes that courts manipulate apparently neutral choice of law rules in order to justify the application of forum law. *Ante* at 281-282. This defeats the parties' expectation that choice of law rules will be neutrally applied. I agree with the majority's comment that this preference is not surprising. *Id.* However, the majority fails to take steps to eliminate this problem. Indeed, the analysis that the majority uses to determine that Ohio and Ontario have no interest in this litigation is an example of that approach.

---

Ontario has no interest in this litigation. It also fails to explain why it employs this approach.

[9] *Id.* at 28. ("Since neither party in this case is a citizen of Wisconsin [where the accident occurred], that state has no interest in seeing its limitation of damage provision applied.")

These serious flaws in what is now the choice of law rules of this state lead me to believe that Michigan should select a new choice of law approach. I feel that lex fori should be adopted. This approach will avoid the three evils of the majority's methodology. First, under lex fori, Michigan courts will only apply Michigan law in most cases. This eliminates the problems that result when a Michigan court applies the laws of another jurisdiction. Second, a lex fori approach will bring clarity and predictability to this area of the law. All parties entering a Michigan court would know that they are to be governed by Michigan law.

Finally, courts would not be tempted to manipulate the choice of law rules. The lex fori approach would eliminate the need for a court to employ one of the two primary techniques that courts have used to avoid the application of a foreign jurisdiction's law. The court would not have to invoke a public policy exception to a rule requiring the application of another jurisdiction's law and would not have to resort to recharacterizing an issue as procedural, rather than substantive, to allow the application of the forum's law.[10] The lex fori rule would generally

---

[10] In *Olmstead, supra* at 9-10, this Court stated:

As noted in [*Sexton v Ryder Truck Rental, Inc*, 413 Mich 406, 426-431; 320 NW2d 843 (1982)], courts employed escape devices to avoid potentially harsh results [from the common-law rule of lex loci delicti]. The two main manipulative techniques were "procedural characterization" and the "public policy" exception. *Id.* at 426. Procedural characterization involves characterization of an issue as procedural rather than substantive, and then applying forum law to the procedural issues. Courts, thus, were able to evade applying the law of the state in which the wrong occurred.

The public policy exception was invoked when the application of a foreign law would be violative of Michigan public policy.

eliminate the need for a court to distinguish between substantive and procedural law. Rather, the laws of Michigan, substantive and procedural, would clearly govern without any possibility for manipulation. This would ensure that courts fulfill the legitimate expectation of the litigants that laws be applied evenly and fairly.

I am aware that the lex fori approach has been criticized for encouraging forum shopping. This supposed evil is greatly exaggerated and should not deter this state's adoption of the lex fori approach. Forum shopping is thought to be an evil because it allows a plaintiff to expose a defendant to the laws of a forum that has little involvement in the litigation, assuming that the forum has jurisdiction over the defendant. *Olmstead*, 428 Mich 26. Under the approach I propose, an entity may be subjected to Michigan law concerning a cause of action that may have arisen elsewhere, if all constitutional requirements are satisfied. However, this should not prevent the adoption of the lex fori approach in this state.

Initially, it is important to recognize that a forum shopping party who chooses Michigan is asking the courts of this state to effectuate the laws and policies of Michigan. There is no reason why Michigan courts should summarily refuse this request. Rather, it is the duty of Michigan courts to effectuate these laws and policies. Assume that a plaintiff chooses to file suit in Michigan because Michigan law recognizes his claim. The application of Michigan law to this plaintiff's claim will fulfill the policy expressed by the Michigan Legislature, which recognizes the claim. Thus, forum shopping is not necessarily problematic to the extent

that it leads to the fulfillment of the laws and policies of this state.

Forum shopping is also commonly assumed to be unfair to defendants. This view is based on the premise that the plaintiff has selected an unfair forum.[11] However, the law that the defendant would have the court apply is likely to be just as unfair.[12] Indeed, the defendant will likely urge the court to apply the law of the jurisdiction that is most certain to lead to a dismissal.[13] Thus, while the plaintiff may "shop" for a forum whose law is beneficial to its case, the defendant is just as likely to "shop" for law favorable to it. Thus, there is really no innocent party in these situations. The fairest way to resolve this is to rely on the traditional notion that the plaintiff is the master of his lawsuit, and, as such, is entitled to choose the forum.[14] Also, in the vast majority of cases, an entity that has sufficiently connected itself to Michigan so that a Michigan court has jurisdiction over it will not be unfairly burdened by the application of Michigan's laws.

Finally, it should be pointed out that choice of law rules that focus on interests do not automatically discourage forum shopping. Indeed, choice of law methodologies that focus on abstract interests are also vulnerable to manipulation.[15] Thus, no choice of law system is entirely free from forum shopping. However, I

---

[11] See Weinberg, n 3 *supra* at 64.

[12] See *id.*

[13] See *id.* at 71.

[14] See Brown, n 2 *supra* at 668-672 (discussing the ways in which the American legal system is benefited when the plaintiff is allowed to choose the forum, and the forum applies the lex fori).

[15] See Brown, n 2 *supra* at 674, quoting Gottesman, *Draining the dismal swamp: The case for federal choice of law statutes,* 80 Geo L J 1, 9

feel that any negative effects that would result from forum shopping as a result of the adoption of a lex fori approach would be outweighed by the benefits of maintaining a clear, predictable choice of law system that would require Michigan courts to give effect to Michigan law.

The only limits placed on a lex fori system should be those required by the United States Constitution. In *Allstate*, a plurality of the United States Supreme Court found that a state could apply its law to a case if it had "significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *Allstate*, 449 US 308. While this seems to be a fairly stringent test, the Court found that only a few tangential contacts were needed to satisfy it.[16] The United States Supreme Court affirmed the *Allstate* significant-contacts test in *Phillips Petroleum Co v Shutts*, 472 US 797, 814-823; 105 S Ct 2965; 86 L Ed 2d 628 (1985). It found that a Kansas court could not apply Kansas contract and equity law to every claim made by over 28,000 class action plaintiffs when less than three percent of the plaintiffs and less than one percent of the disputed leases had any connection to Kansas. Thus, there is clearly some threshold level of contacts below which

---

(1991) (explaining that parties will choose a forum whose choice of law rules lead to the adoption of favorable foreign law).

[16] The suit involved an automobile accident that had occurred in Wisconsin involving only Wisconsin residents. *Allstate*, 449 US 305. However, the decedent had worked in Minnesota. *Id.* Further, the decedent's widow moved to Minnesota after the accident. *Id.* The widow then sued in Minnesota under an insurance policy issued by a company that did business in Minnesota. *Id.* at 305, 317. The Court found these contacts sufficient to uphold the application of Minnesota law by a Minnesota court. *Id.* at 313-319. See also Brown, n 2 *supra* at 696 (describing the *Allstate* test as easily met).

a forum state may not constitutionally apply its law.[17] However, it appears that this threshold is very low.[18] Thus, the United States Constitution does not substantially limit Michigan's ability to adopt a lex fori approach.

Thus, I would adopt the lex fori approach in all tort cases involving choice of law issues. As discussed above, the United States Constitution prohibits the application of lex fori in some cases. Indeed, *Shutts* shows that a court may have jurisdiction over a case, but not be able to apply its substantive law. In those cases where a Michigan court has jurisdiction, but Michigan has insufficient contacts to the litigation or the parties so that the application of Michigan law would be arbitrary or unfair, a court should select the law of the most interested jurisdiction, guided by the principles set forth in *Olmstead*.

In this case, lex fori should be applied because no constitutional limitations on lex fori are applicable. The United States Supreme Court has found that forum states have complete authority to apply their own procedural rules, including statutes of limitation. *Sun Oil Co v Wortman*, 486 US 717, 725-730; 108 S Ct 2117; 100 L Ed 2d 743 (1988). Michigan classifies statutes of limitation as procedural. *Stephens v Dixon*, 449 Mich 531, 534; 536 NW2d 755 (1995); *People v Russo*, 439 Mich 584, 595; 487 NW2d 698 (1992). Further, Michigan has significant contacts with this case

---

[17] See Richman & Reynolds, Understanding Conflict of Laws (2d ed), § 94[b][2], p 279.

[18] See *id.* at § 94[d], pp 281-282 (explaining why there is only a "remote" chance that the United States Supreme Court would upset a state's choice of law). See also Weinberg, n 3 *supra* at 68-69 (arguing that the Supreme Court has weakened *Allstate* and is very tolerant of the states' choice of law results).

to constitutionally apply its law because the accident occurred in Michigan and a Michigan court is the forum. Thus, I concur with the majority that Michigan's statute of limitations should apply in this case. However, I cannot agree with the choice of law methodology employed by the majority. I would adopt a lex fori approach.

RILEY, J., concurred with BRICKLEY, J.

KELLY, J., took no part in the decision of this case.