**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0598n.06
Filed: July 14, 2005

No. 04-1978

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MELVIN D. WILLIAMS,                          )
                                             )        **ON APPEAL** FROM THE
    **Plaintiff-Appellant,**           )        UNITED STATES DISTRICT
                                             )        COURT FOR THE EASTERN
v.                                           )        DISTRICT OF MICHIGAN
                                             )
TOYS "R" US,                                 )
                                             )        **O P I N I O N**
    **Defendant-Appellee.**            )
    _____ )

**Before: MOORE, and COLE, Circuit Judges, and WISEMAN,[*] District Judge.**

    **KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Melvin D. Williams

("Williams") appeals from the district court's order granting summary judgment in favor of

Defendant-Appellee Toys "R" Us on Williams's claims of liability for personal injury in this

diversity of citizenship action. Williams also contends that the district court erred in applying

Michigan law rather than Pennsylvania law. For the reasons stated below, we **AFFIRM** the district

court's judgment.

**I. BACKGROUND**

    On March 9, 2003, Williams visited a Toys "R" Us store in Monroeville, Pennsylvania with

his wife and two grandsons. The group browsed the aisles of the store and selected several toys

_____

[*]The Honorable Thomas A. Wiseman, United States District Judge for the Middle District
of Tennessee, sitting by designation.

which Williams told his grandchildren he would later purchase for them as birthday presents. Some time after the presents had been selected, the group headed towards the store's restrooms. Williams's grandchildren ran ahead, while Williams and his wife followed behind. Williams and his wife then turned down an aisle which Williams thought would lead to the restrooms. After turning down the aisle Williams realized that it was the incorrect aisle. Williams then started to walk back out of the aisle. As he did so, Williams stepped on a skateboard that had been left on the floor in the center of the aisle.[1] The skateboard slid out from under Williams, causing him to fall forward onto the floor. As a result of the fall, Williams fractured two ribs, broke a tooth, and injured his mouth and right hand. Following the accident, Williams attempted to use a store telephone to contact the store manager but was unable to contact him. Williams also informed two employees of his fall before he left the store. Nine days later, Williams telephoned the store and reported the accident to the store manager. An accident report was then completed by the store manager.

On March 28, 2003, Williams filed suit pro se against the defendant in district court. Following the completion of discovery, the defendant filed a motion for summary judgment. A magistrate judge held a hearing on the motion and ultimately recommended that the district court grant the defendant's motion for summary judgment. The district court agreed with the magistrate judge's recommendation and entered judgment in favor of the defendant. Williams then filed this timely appeal.

---

[1]Williams's description of the accident has changed during litigation. In his complaint, Williams indicated that the accident occurred after he had turned around to exit the aisle. In his deposition, however, Williams seemed to indicate that the accident occurred as he initially walked down the aisle. It is unnecessary for us to determine which is the accurate version of Williams's accident as this factual discrepancy does not create a genuine issue of material fact. Under either set of facts, the district court properly granted the defendant's motion for summary judgment.

## II.  ANALYSIS

### A.  Summary Judgment

We review de novo a grant of summary judgment.  *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388 (6th Cir. 1993).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart*, 12 F.3d at 1388-89 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

#### 1.  Invitor Liability Under Michigan Law

In order to establish a negligence claim, Michigan law requires a plaintiff to prove four elements:  (1) duty, (2) breach, (3) injury, and (4) proximate cause.  *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 n.10 (Mich. 1992) ("The elements of a cause of action in negligence are as follows:  1. That the defendant owed a legal duty to the plaintiff; 2. That the defendant breached or violated the legal duty it owed to the plaintiff; 3. That the plaintiff suffered damages; and 4. That the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff.").  In this case the legal duty of care owed by Toys "R" Us to Williams is that which a business owner owes a business invitee.  That duty of care is only breached where a business owner creates a dangerous condition, or where the business owner knew or should have known about the unsafe condition's existence.  *Whitmore v. Sears, Roebuck & Co.*, 279 N.W.2d 318, 321 (Mich. Ct. App. 1979).  Moreover, even if a business owner is aware of an unsafe condition, the owner has no

duty to warn invitees of the condition's existence if the condition is: (1) open and obvious; and (2) not unreasonably dangerous. *See Lugo v. Ameritech Corp.,* 629 N.W.2d 384, 386 (Mich. 2001) ("[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk.").

In this case, Williams argues that Toys "R" Us had actual or constructive knowledge of the unsafe skateboard and that the condition was not open and obvious. Alternatively, Williams argues that even if the skateboard's existence was open and obvious, there was a special aspect of the condition that made it so unreasonably dangerous that Toys "R" Us had a duty to protect him from the condition. Because we agree with the district court that no genuine question of material fact exists as to whether the skateboard's existence in the aisle presented an open and obvious condition or whether the condition was unreasonably dangerous, we conclude that the district court properly granted summary judgment.

## 2. Open and Obvious Doctrine

As stated above, even if a business invitor knows or should know of a dangerous condition, generally an invitor has no duty to warn an invitee of the condition if it is open and obvious. An open and obvious danger is a danger that is visible, well-known, or discernible by casual inspection. *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 214 (Mich. 1992). Under Michigan law, the test for whether a condition is open and obvious is objective, not subjective. Thus, we do not ask whether the skateboard was open and obvious to Williams, but rather whether a reasonable person would have discovered the danger on casual inspection. *Novotney v. Burger King Corp.*, 499

4

N.W.2d 379, 381 (Mich. Ct. App. 1993) (stating that "it is not relevant to the disposition of this matter whether plaintiff actually saw the [condition]. Rather, it is necessary for plaintiffs, to have their claim survive the motion for summary disposition, to come forth with sufficient evidence to create a genuine issue of material fact that an ordinary user upon casual inspection could not have discovered the existence of the [condition]").

If a condition is such that an average person would have known of the condition's existence, then an invitee may recover from an invitor only "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo*, 629 N.W.2d at 386. A duty of care may exist where a special aspect of the condition, such as its "character, location or surrounding conditions," indicates that the condition presents an unreasonable danger despite its open and obvious nature. *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 189 (Mich. 1995) (internal quotation marks and citation omitted). As the Michigan Supreme Court noted in *Bertrand*:

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.

*Id.* at 187.

Based on the evidence in this case, we are persuaded that Toys "R" Us did not breach its duty of care because the skateboard was an open and obvious condition which was not unreasonably dangerous to invitees. As the magistrate judge accurately noted: "A skateboard is an object of considerable size. These devices are ubiquitous, and their propensity to roll easily under the weight of a human body is patent." Joint Appendix ("J.A.") at 77-78 (Report and Recommendation at 10-

11).  Therefore, provided that the skateboard was in plain view, an ordinary person would be aware that stepping onto the skateboard could cause that person to slip and fall.  Moreover, Williams does not provide evidence that the skateboard was not visible in the aisle of the store.  Nor does Williams show that the lighting in the store was inadequate or that other objects in the aisle prevented him from observing the skateboard.  On the contrary, Williams stated that the skateboard was in the middle of the aisle and that he was able to see the skateboard after he fell.  Williams also concedes that there were no other toys on the floor in the vicinity of where he fell.  Thus, the skateboard in the aisle would appear to be an open and obvious condition that a reasonable invitee would notice upon causal inspection.

Williams's only additional arguments are that the store's displays are designed to distract the consumer's attention from the floor and that the aisle was narrow.  Neither of these arguments is sufficient to create a genuine issue of material fact as to whether the condition was open and obvious.  First, there is nothing in the evidence to suggest that the aisle was too narrow to permit Williams to avoid the skateboard if Williams had seen it prior to his fall.  In fact, Williams's wife testified during her deposition that the aisle was wide enough to permit her and her husband to walk down the aisle side by side.  Moreover, the fact that the store contained attractive displays is insufficient to create liability in this case.  The defendant's toy displays are precisely the reason why consumers such as the plaintiff enter Toys "R" Us.  Naturally, the defendant designs its displays to attract the consumer's attention as a means of marketing its products.  This use of marketing tools does not detract from the consumer's duty to watch where he or she is going.  Nor does it place a duty upon the defendant to warn consumers like Williams of a skateboard in plain view.  We therefore conclude that the skateboard in this case was an open and obvious condition.

6

Additionally, there is no special aspect which makes the skateboard so unreasonably dangerous as to alter the defendant's duty of care to Williams. As discussed above, nothing in the record suggests that Williams's view of the skateboard was obscured, that there were any other toys in the aisle, or that there was insufficient lighting to allow an ordinary person to see the skateboard. Nor was there anything unusual about the circumstances of Williams's accident. In a toy store it is unsurprising that a toy, such as a skateboard, would be taken off a shelf by a child or some other store patron and left in the aisle. Such an occurrence is inevitable and is the very reason that the ordinary consumer watches where he or she is going in places like toy stores.

Finally, there is no evidence that the accident was the result of the defendant's negligence or that the defendant knew or should have known of the skateboard's existence prior to Williams's fall. In his deposition, Williams admitted that no employees were in the vicinity at the time of his accident. Moreover, no evidence suggests that the skateboard had been in the aisle for a significant period of time prior to Williams's accident such that the defendant should have been aware of its existence. Williams's assertion that other skateboard accidents have occurred in other Toys "R" Us stores around the country does not indicate that the defendant should have known of the skateboard's existence on the floor in this incident. As the magistrate judge correctly noted in this case, "[k]nowledge of previous accidents, in other stores, does nothing to give notice of a stray skateboard in defendant's Monroeville store at any particular time." J.A. at 80 (Report and Recommendation at 13). Thus, Williams has presented no evidence indicating that there were any special aspects of the condition in this case that made the skateboard unreasonably dangerous. We therefore conclude that no genuine issue of material fact exists as to whether the defendant breached the duty of care

7

it owed to Williams as an invitee. Thus, the district court properly granted the defendant's motion for summary judgment.

**B.  Choice of Law**

Williams's final argument is that the district court improperly applied Michigan state law in this case. Because the accident occurred in Pennsylvania, he claims that Pennsylvania tort law should apply. The district court rejected Williams's argument on the grounds that it was likely that Michigan law applied. Alternatively, the district court indicated that it was immaterial whether Pennsylvania or Michigan law applied, as both states employed the open and obvious doctrine. The district court also noted that Williams had not raised the issue of the applicability of Pennsylvania law until filing his objections to the magistrate judge's report and that Williams had opposed Toys "R" Us's motion to transfer the case to Pennsylvania.

As a federal court sitting in diversity, we apply the choice-of-law provisions of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Michigan's choice-of-law rule provides that there is a presumption that Michigan law applies to a case unless there is a rational reason to displace it. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). The Michigan Supreme Court noted in *Sutherland*: "In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* Under this standard, Michigan courts will "use another state's law where the other state has a significant interest and Michigan has only

a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998).

In this case, Pennsylvania may have an interest in having its law applied because the accident occurred there. Pennsylvania's interest, however, does not outweigh Michigan's competing interest in protecting its residents from injury and providing just compensation to its citizens. More importantly, the interests of both states are met by applying Michigan law because Michigan and Pennsylvania tort law would deal with this case in a nearly identical manner. Both states incorporate the open and obvious doctrine and thus bar recovery if a dangerous condition would have been recognized by a reasonable invitee. *See Novotney*, 499 N.W.2d at 381; *Carrender v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983). Because there is no conflict of laws (indeed this is a false conflict situation), we therefore conclude that the district court did not err in applying Michigan state law in this case.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.