*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THE STANDARD FIRE INSURANCE COMPANY
and TRAVELERS PERSONAL SECURITY
INSURANCE COMPANY, as subrogees of John
Lombard,

     *Plaintiffs-Appellants*,

    v.

FORD MOTOR COMPANY,

     *Defendant-Appellee*.

No. 12-1583

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-11164—Bernard A. Friedman, District Judge.

Argued: June 12, 2013

Decided and Filed: July 24, 2013

Before: COLE and McKEAGUE, Circuit Judges; ZOUHARY, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** W. Ransom Pipes, HANNAH, COLVIN & PIPES, LLP, Baton Rouge, Louisiana, for Appellants. Clay A. Guise, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** W. Ransom Pipes, HANNAH, COLVIN & PIPES, LLP, Baton Rouge, Louisiana, for Appellants. Clay A. Guise, Matthew Mitchell, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan, Timothy M. Kuhn, DYKEMA GOSSETT PLLC, Detroit, Michigan, for Appellee.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

McKEAGUE, Circuit Judge.  Plaintiff insurance companies filed this products liability action against Ford Motor Company in the Eastern District of Michigan as subrogees of their insured, John Lombard.  Lombard is a Tennessee resident whose personal property and Tennessee home were damaged when his 1997 Lincoln Town Car caught fire in his driveway in 2007.  The car was licensed, registered, and insured in Tennessee.  Ford moved for summary judgment contending that plaintiffs' claims are governed by Tennessee law and that Tennessee's statute of repose for products liability actions bars plaintiffs' claims.  The district court granted Ford's motion.  On appeal, plaintiffs contend the district court misapplied Michigan's choice of law rules.  This case offers the opportunity to resolve an apparent split of authority between the Sixth Circuit and the Michigan Court of Appeals as to how the Michigan choice of law rules are to be applied.  For the reasons explained below, we affirm the judgment of the district court.

## I.  BACKGROUND

Tennessee resident John Lombard owned a 1997 Lincoln Town Car that he acquired in 2004.  Lombard's Lincoln was partially manufactured, and its final assembly completed, in November 1996 at Ford Motor Company's Wixom, Michigan plant.  The original purchaser bought the car in December 1996.

Plaintiffs, The Standard Fire Insurance Company and Travelers Personal Security Insurance Company, both Connecticut corporations, insured Lombard's Tennessee home and personal property.  On March 29, 2007, the Lincoln allegedly caught fire in Lombard's driveway, causing damage to the car, Lombard's residence, and his personal property.  Plaintiffs reimbursed Lombard for his losses and, as subrogees under their insurance contracts, commenced this action in March  2010 in the Eastern District of Michigan, asserting products liability, breach of warranty and negligence claims.  Plaintiffs allege the fire was due to a defective cruise control system in the Lincoln.  The

case was subject to an intra-district transfer and made part of a multi-district litigation action involving potentially defective speed control deactivation switches manufactured by Ford. *See* MDL No. 1718, *In re Ford Motor Company Speed Control Deactivation Switch Products Liability Litigation.*

Ford filed a motion for summary judgment contending that although the lawsuit was filed in Michigan, Tennessee law applies and bars the insurers' claims.[1] In Tennessee, any action seeking to recover for personal injuries, death or property damage caused by a defective or unreasonably dangerous product "must be brought within ten (10) years from the date on which the product was first purchased for use or consumption . . . ." Tenn. Code § 29-28-103(a); *Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 512 (Tenn. Ct. App. 1999).

The Lincoln was first purchased in November 1996. The insurers' complaint, filed in March 2010, was filed more than ten years after the Lincoln was first purchased. If Tennessee law applies, as the district court concluded, the claims are barred by the Tennessee statute of repose and summary judgment for Ford must be upheld. Michigan, on the other hand, does not have a statute of repose that would bar the claims. If Michigan law applies, the summary judgment ruling would be vacated and the case remanded for further proceedings.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, "using the same Rule 56(c) standard as the district court." *Bowling Green v. Martin Land Dev. Co., Inc.*, 561 F.3d 556, 558 (6th Cir. 2009). A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Further, "a federal court in a diversity action is obligated to apply the law it believes the highest court of the state would apply if it were

---

[1]As subrogees, plaintiff insurers stand in the shoes of, and have no greater rights than, their insured. *Yerkovich v. AAA*, 610 N.W.2d 542, 544 (Mich. 2000). Hence, although plaintiffs are not residents of Tennessee, they recognize that, for purposes of the choice of law analysis, it is Tennessee's interests in the litigation that must be weighed against Michigan's.

faced with the issue." *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir. 1990). The sole issue on appeal is whether the district court erred in its determination, under Michigan's choice of law rules, that Tennessee's interests in having its law applied to plaintiffs' claims against Ford outweighed Michigan's interests.

## A. District Court Ruling

The parties agree that Michigan's choice of law framework is established in two Michigan Supreme Court decisions: *Olmstead v. Anderson*, 400 N.W.2d 292, 302 (Mich. 1987), and *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). In a tort action, Michigan courts recognize a presumption in favor of *lex fori* and apply Michigan law "unless a 'rational reason' to do otherwise exists." *Sutherland*, 562 N.W.2d at 471. The two-step test for determining whether such a rational reason exists was distilled in *Sutherland* from *Olmstead* as follows:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.*

In ruling that Tennessee law applies in this case, the district court did not cite *Sutherland*, but did undertake the same interest-weighing analysis, relying on *Olmstead* and *Farrell v. Ford Motor Co.*, 501 N.W.2d 567 (Mich. Ct. App. 1993). The court summarized its analysis as follows:

> Accordingly, after thorough review, the Court is satisfied that Tennessee has an obvious and substantial interest in shielding Defendant from open-ended products liability claims. In addition to the facts regarding the incident [i.e., involving property damage sustained in Tennessee by a Tennessee resident caused by a vehicle registered and insured in Tennessee], the Court finds it compelling that Defendant generates substantial commerce within Tennessee, and directly employs numerous Tennessee residents.

> While Tennessee has a substantial interest in applying its law, Michigan has little or no interest in this Tennessee incident involving a Tennessee resident.  Further, "Michigan has no interest in affording greater rights of tort recovery to a [Tennessee] resident than those afforded by [Tennessee].  Michigan is merely the forum state and situs of Defendant's headquarters.  Such minimal interests are insufficient to justify the result-oriented forum shopping that has been attempted."

R. 25, Opinion at 5, page ID # 320 (quoting *Farrell*, 501 N.W.2d at 572-73 (internal alterations in original)).

The present facts are not materially distinguishable from those addressed in *Farrell*, where Michigan's presumption in favor of *lex fori* was deemed overcome and Farrell's claims were held governed by North Carolina law.  Although *Farrell* was decided before *Sutherland*, it applied the teaching of *Olmstead* in a manner entirely consistent with the two-step analysis prescribed in *Sutherland.*  The district court found *Farrell*'s application of Michigan's choice of law framework "controlling."

The *Farrell* analysis became the template for another post-*Sutherland* decision of the Michigan Court of Appeals, *Hall v. General Motors Corp.*, 582 N.W.2d 866 (Mich. Ct. App. 1998).  In *Hall*, too, the court was faced with a products liability action against a Michigan manufacturer by a plaintiff who was a resident of North Carolina when he was injured in North Carolina while working on a vehicle registered, licensed and insured in North Carolina.  Hall had moved to Michigan before he filed the action in Michigan, but for purposes of the choice of law analysis, his residence at the time of injury, not at the time of filing, was deemed determinative.  Following *Farrell*'s lead, the *Hall* court held that North Carolina's "substantial interest" in applying its law to the dispute outweighed Michigan's "minimal interest."  *Id.* at 869.  The presumption in favor of *lex fori* having been overcome, the *Hall* court applied North Carolina's statute of repose and Hall's claim was held time-barred.  *See also Mitchell v. McNeilus Truck & Mfg., Inc.*, No. 304124, 2012 WL 5233630 (Mich. Ct. App. Oct. 23, 2012) (applying *Sutherland* test in manner consistent with *Farrell* and *Hall*).

Thus, under circumstances similar to those presented here, the Michigan Court of Appeals has consistently applied the *Olmstead/Sutherland* analysis to hold the *lex fori* presumption overcome and has instead applied the law of a foreign state (i.e., the state of the plaintiff's residence, where the injury occurred). The district court was convinced that the analysis employed by Michigan's intermediate appellate court is indicative of how Michigan's highest court would rule if faced with the issue. R. 25, Opinion at 3-4, Page ID #318-19 (citing *Monette v. AM-7-7 Baking Co., Ltd.*, 929 F.2d 276, 280 (6th Cir. 1991) (noting that decision of intermediate state appellate court, though not controlling, is not to be disregarded unless other persuasive data demonstrates highest state court would decide otherwise)). Plaintiffs disagree for several reasons.

### B. How Would Michigan's Highest Court Rule?

Plaintiffs point out that in *Olmstead* and *Sutherland*, unlike the Michigan Court of Appeals decisions, the Michigan Supreme Court upheld the presumption favoring the law of the forum. Moreover, consistent with *Olmstead* and *Sutherland*, plaintiffs note that the Sixth Circuit, when confronted with circumstances analogous to this case in *Mahne v. Ford Motor Co.*, 900 F.2d 83 (6th Cir. 1990), also applied Michigan law. Plaintiffs contend these authorities represent better indicators of how the Michigan Supreme Court would rule. We are not persuaded.

In both *Olmstead* and *Sutherland*, the court never reached the second step of the choice of law analysis, the interest-weighing step, because the court found in each case that *no* foreign state had an interest in having its law applied. The *lex fori* presumption was left undisturbed because no other competing state law was shown to meet even step one of the analysis. In *Olmstead*, a Michigan resident caused an accident in Wisconsin that killed a Minnesota resident. Wisconsin, the state of the injury, was deemed to have no interest in having its law applied because no citizen of Wisconsin was a party to the action. *Olmstead*, 400 N.W.2d at 304. The court also found there were no forum shopping concerns that counseled against applying the law of the forum. *Id.* at 303. The court thus found no rational reason to displace Michigan law.

In *Sutherland*, an Ohio resident driving a truck licensed in Ohio collided on a Michigan highway with a truck owned and leased by Canadian corporations, and driven by a resident of Ontario, Canada. The Ohio resident brought a negligence action in a Michigan court more than two years after the accident. In both Ohio and Ontario, a two-year statute of limitations applied to a negligence action. Michigan's statute of limitations was three years. The court concluded that Ohio had no interest in having its law apply because the plaintiffs' residency in Ohio, with nothing more, was insufficient to support the choice of a state's law. *Sutherland*, 562 N.W.2d at 472. The court next concluded that Ontario had no interest in having its law apply because the choice of law rule in Ontario was *lex loci delicti*, so that even if plaintiffs had filed suit in Ontario, the Ontario court would have applied Michigan law and the Michigan three-year statute of limitations. *Id.* at 472-73. Because no foreign state had an interest, the court applied the law of the forum without having to assess Michigan's interests.

In *Olmstead* and *Sutherland*, the Michigan Supreme Court upheld the presumption in favor of *lex fori* under circumstances materially distinguishable from those presented here and in *Farrell*, *Hall* and *Mitchell*. In *Olmstead* and *Sutherland*, the presumptively applicable law of the forum was applied without any need to undertake interest-weighing, because there were no competing interests. Here, in contrast, as in the Michigan Court of Appeals decisions, interest weighing is required because a foreign state undeniably has an interest in having its law applied to an action filed by one of its citizens stemming from injury sustained there. That this distinction is material is confirmed by reasoning contained in *Olmstead*, as noted in *Farrell*.

The *Olmstead* court cited *Hampshire v. Ford Motor Co.*, 399 N.W.2d 36 (Mich. Ct. App. 1986), *lv. denied* Jan. 26, 1987, as an example of the interest-weighing approach used in a growing majority of Michigan cases. In *Hampshire*, a California resident's vehicle was struck in California by a stolen Ford vehicle. The plaintiff sued in Michigan alleging negligent design of the ignition-locking system. The only Michigan connections were that Ford's headquarters were in Michigan and Michigan was the forum state. *Hampshire*, 399 N.W.2d at 38. After taking into account the

plaintiff's residence, the place where the cars were registered, the place of the accident, and the minimal Michigan connections, the *Hampshire* court concluded California law would govern because California's interests were superior to Michigan's. *Id.*

*Olmstead* noted that Michigan courts, in cases like *Hampshire*, "in which the plaintiff was not a resident, but brought suit in Michigan (presumably asserting jurisdiction over the defendant on the basis of the defendant's contacts with Michigan) have generally applied *lex loci delicti.*" *Id.* at 302. The court distinguished those cases, observing that in all of them, like the instant case, "the injury occurred in states in which the plaintiff had substantial contacts or actually resided in fact at the time of the injury." *Id.* Notably, the *Olmstead* court did not question, criticize, or even hint at disapproval of the approach taken in *Hampshire* and the resultant application of *lex loci delicti.* Quite to the contrary, *Olmstead*'s discussion of *Hampshire* can only be seen as tacit approval, for the same Michigan Supreme Court that decided *Olmstead* denied leave to appeal in *Hampshire* eleven days earlier.

The significance of *Olmstead*'s discussion of *Hampshire* was not lost on the *Farrell* court; it found *Hampshire*'s analysis persuasive and controlling. *Farrell*, 501 N.W.2d at 570. The *Farrell* court rejected the argument that *Olmstead* overruled *Hampshire* or employed a different choice of law methodology. The court found the different results in *Olmstead* (applying *lex fori*) and *Hampshire* (applying *lex loci delicti*) driven by materially different facts. We agree. We find no support in *Olmstead* or *Sutherland* for plaintiffs' argument that, faced with the instant facts, the Michigan Supreme Court would decide the choice of law question differently than the Michigan Court of Appeals did in *Hampshire*, *Farrell*, *Hall* and *Mitchell*.

Plaintiffs' reliance on our decision in *Mahne*, however, presents a different question. Christine Mahne, a Florida resident, was injured in Florida when the Ford car in which she was a passenger burst into flames after being rear-ended by another vehicle. She tried to sue in Florida but was precluded from doing so by the Florida statute of repose then in effect, which barred products liability actions brought more than twelve years after the date the product was first purchased. Mahne next filed a diversity action

against Ford in the Eastern District of Michigan, alleging various design and manufacturing defects. Ford moved to dismiss, contending Florida law should apply and that Florida's statute of repose barred the action. The district court agreed. *Mahne*, 900 F.2d at 84-85. We reversed, concluding that Florida had no interest in having its law applied and that *lex fori* therefore applied, without regard to the nature or quality of Michigan's interests. *Id.* at 88.

*Mahne* was decided after *Olmstead*, but before *Sutherland* and *Farrell*. As we endeavored to discern and apply Michigan's still evolving choice of law rules, we recognized (a) that although the rule favoring *lex loci delicti* had been abandoned in Michigan, *Olmstead* had "declined to adopt any other specific choice-of-law methodology and, instead, left choice-of-law issues to be evaluated on a case-by-case basis;" (b) that a majority of Michigan courts had employed an interest-weighing approach; and (c) that the question to be answered in each case was whether "reason requires that foreign law supersede the law of this state." *Id.* at 85-86 (quoting *Olmstead*, 400 N.W.2d at 302). It had become clear, we observed, "that Michigan law as the forum law presumptively controls the litigation; and further, that there must be a rational reason to displace Michigan law." *Id.* at 87.[2]

We recognized in *Mahne* that *Olmstead* did not address facts like those presented in *Mahne* (and here), where the non-Michigan plaintiff suing in a Michigan court was the resident of the state where the injury occurred. *Id*. We also recognized that lower courts in Michigan had tended to apply *lex loci delicti* under such circumstances and that

---

[2]Our statement of the ultimate question in *Mahne*, drawn directly from *Olmstead*, whether "reason requires that foreign law supersede the law of this state," is slightly different from the formulation set forth eleven years later in *Sutherland*. Citing *Olmstead*, the *Sutherland* court held the ultimate question asks whether, if a foreign state has an interest in having its law applied, "Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland*, 562 N.W.2d at 47. This may be a distinction without a difference. To be sure, the discrepancy has received no attention in the Michigan case law and may be inconsequential. Yet, the *Olmstead* formulation (whether the foreign state's interests are such that "reason requires" the presumption favoring *lex fori* be disregarded) undeniably gives more weight to the presumption than the *Sutherland* formulation (whether Michigan's interests "mandate" that the presumption favoring *lex fori* be enforced despite the foreign state's interests).

In *Olmstead*, *lex fori* had recently become the presumptive choice, displacing *lex loci delicti*. Could it be the strength of the presumption had eroded during the ensuing eleven years of experience, such that the standard needed slight revision in *Sutherland*? Any answer would be speculative. Yet, it is apparent that our opinion in *Mahne*, issued after *Olmstead*, but before *Sutherland*, *Farrell*, *Hall* and *Mitchell*, accorded the presumption greater weight than have subsequent decisions of the Michigan courts.

*Olmstead* had distinguished those cases. We called the point "problematic." Yet, consistent with *Olmstead*, we held that interest weighing was appropriate only if the foreign state had an interest in applying its law. *Id.* Based on our review of the particular facts and foreign state interests at issue in *Mahne*, we concluded that Florida had no interest in having its law applied. Hence, like the Michigan Supreme Court in *Olmstead* and later in *Sutherland*, we concluded that the presumption in favor of *lex fori* remained intact.

*Mahne* thus supports plaintiffs' position, but only if we find Tennessee has no interest in having its law applied in this case. *Mahne* held, under the facts presented, that Florida had no interest, notwithstanding that the plaintiff was a Florida resident and the injury occurred there. To this extent, *Mahne* appears to be at odds with *Hampshire*, *Farrell*, *Hall* and *Mitchell*, where the fact that the plaintiff was a resident of the foreign state where the injury occurred contributed significantly to findings that the foreign state had substantial interest in having its law applied. Yet, in making the choice of law determination, "each case must be evaluated on the circumstances presented." *Olmstead*, 400 N.W.2d at 302. *Mahne*'s determination that Florida had no interest was driven by the presumption that Florida's particular statute of repose was designed to protect only Florida manufacturers. We therefore concluded in *Mahne* that applying Florida law in an action against an out-of-state manufacturer would not benefit the interests the law was designed to protect. *Mahne*, 900 F.2d at 88.

In this case, we find no error in the district court's determination that Tennessee had a substantial interest in having its law applied. The district court cited the uncontested showing that plaintiffs' insured was a Tennessee resident who sustained property damage in Tennessee allegedly caused by a defect in a vehicle registered and insured in Tennessee. The court also noted undisputed evidence that defendant Ford generated substantial commerce in Tennessee and employed numerous Tennessee residents. The court concluded that Tennessee had an obvious and substantial interest in applying its statute of repose to shield manufacturers like Ford from open-ended liability claims.

Plaintiffs' contention that these considerations amount to no interest at all is based almost exclusively on *Mahne* and is unpersuasive. *Mahne* evaluated a different law in a different state at a different stage in the development of Michigan's choice of law framework. To the extent our decision in *Mahne* is construed as reflecting a more robust view of Michigan's *lex fori* presumption than has been given effect in subsequent Michigan case law, we acknowledge that our discernment of Michigan's evolving law may have missed the mark. Our assessment in *Mahne*, more than twenty years ago, of how Michigan's highest court would have answered the choice of law question under the given facts and circumstances was not binding, of course, on the Michigan Supreme Court or the Michigan Court of Appeals. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008) ("No federal court has the final say on what [state] law means."). In the absence of specific guidance from the state's highest court, we are "obligated to follow published intermediate state appellate court decisions unless we are convinced that the highest court would decide differently." *Ruth v. Bituminous Cas. Corp.*, 427 F.2d 290, 292 (6th Cir. 1970); *see also Monette*, 929 F.2d at 280-81 (same). Since our *Mahne* decision, the Michigan Court of Appeals has consistently applied *Olmstead*'s teaching under analogous circumstances to find that the foreign state has a substantial interest in having its law applied. We, like the district court, are obligated to follow those authorities because there is no convincing reason to believe Michigan's highest court would decide differently.

## C. Interest Weighing

Because Tennessee has a substantial interest in having its law applied, interest weighing is required. The district court compared the interests involved and held that Tennessee's substantial interest outweighed Michigan's minimal interest. The court held Michigan's interest "minimal" because Michigan is merely the forum state and situs of Ford's headquarters. Michigan was deemed to have no interest in affording greater rights of tort recovery to a Tennessee resident than would Tennessee law. Such minimal interest, the court said, was insufficient to justify the result-oriented forum shopping that had led plaintiffs to file their action in Michigan instead of Tennessee. Again, the

court's reasoning is entirely consistent with *Hampshire*, *Farrell*, *Hall*, and *Mitchell*. Yet, plaintiffs contend the analysis is wholly inadequate.

Plaintiffs contend the district court over-valued Tennessee's interests and ignored some of Michigan's. Citing *Sutherland*, 562 N.W.2d at 287, plaintiffs argue that their insured's "residence in Tennessee, with nothing more, is insufficient to support the choice of a state's law." True enough, but Tennessee's interest in applying its law is not premised *solely* on John Lombard's place of residence. The district court, like the Michigan Court of Appeals in *Hampshire*, *Farrell* and *Hall*, treated the fact that the plaintiff's residence was in the foreign state where the injury occurred as a significant factor.

Plaintiffs acknowledge that *loci delicti*, "the place of the wrong," is a legitimate consideration, but they insist the district court misunderstood the wrong at issue in this litigation. Although the fire resulting in property damage occurred in Tennessee, plaintiffs contend the wrongdoing that allegedly gives rise to Ford's liability (i.e., negligent design and manufacture and failure to warn) occurred in Michigan. Michigan, they argue, is just as much the place of the wrong as Tennessee. The problem with this argument is that it finds no support in Michigan law. Michigan law recognizes the place where the injury was sustained as the place of the wrong; the place where the last event necessary to create liability occurred. *Sutherland*, 562 N.W.2d at 468; *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 848 (Mich. 1982). Plaintiffs cite no contrary authority. Indeed, in *Hampshire*, *Farrell* and *Hall*, all of which involved analogous products liability claims against a Michigan automobile manufacturer, the Michigan Court of Appeals treated the place where the injury occurred as the place of the wrong and as a significant factor.

Plaintiffs also challenge the district court's finding that application of the Tennessee statute of repose would benefit the interests it was designed to protect by shielding manufacturers like Ford from open-ended product liability claims. The preamble of the Tennessee Products Liability Act makes clear that the purpose of the statute of repose is to provide manufacturers with some certainty about potential tort

liability by blocking liability after ten years to limit costs of product liability insurance and thereby lessen the costs of products to consumers. Tenn. Code § 29-28-103; *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1139 (6th Cir. 1986) (recognizing rational relationship between statute of repose and its purpose). Plaintiffs cite no grounds for finding that enforcement of Tennessee's statute of repose would not further its purposes. On the other hand, the district court's reasoning finds support in Michigan case law. The Michigan Court of Appeals held that the foreign state had an interest in enforcing its statute of repose in *Farrell*, *Hall* and *Mitchell*. Again, plaintiffs' argument is at odds with Michigan law.

Plaintiffs fault the district court for not explicitly considering, as part of its interest weighing, the expectations of the parties and the predictability of the results associated with the choice of law determination. Such factors play little if any role in modern choice of law analysis under Michigan law. They are not even mentioned in *Sutherland*, *Farrell*, *Hall* or *Mitchell*. Rather, the expectations of the parties and predictability are factors mentioned in *Olmstead*, along with discouragement of forum shopping, as justifications for the former preference for *lex loci delicti* before the presumption in favor of *lex fori* was adopted in Michigan. *See Olmstead*, 400 N.W.2d at 295, 302-03. When *lex loci delicti* was the rule, there was a measure of certainty in the understanding that a tort action would ordinarily be filed in, and governed by the law of, the state where the injury occurred. A party wishing to avoid *lex loci delicti* would be left to argue that an exception to the rule was warranted and that the perceived advantages of *lex loci delicti* (e.g., prevention of forum shopping) did not apply. *See id.*

Here, the district court did not mention the expectations and predictability associated with applying *lex loci delicti* because they were not factors in the decision. Rather, *lex loci delicti* was applied under Michigan's two-step choice of law framework because Tennessee's interests were found to outweigh Michigan's and the presumption in favor of *lex fori* was overcome. The district court did express concern that plaintiffs' suit in Michigan had been motivated by "result-oriented forum shopping." This is an abuse that the rule favoring *lex fori* is vulnerable to, as recognized in *Olmstead*. When

a plaintiff foregoes the economies afforded by bringing suit at home, suspicions arise as to whether a different forum was chosen solely to circumvent some policy in one state and secure some legal advantage in another.  *Olmstead*, 400 N.W.2d at 303-04.  The concern is not as great where, as here, the chosen forum is the defendant's home state.  *See id.*  Still, the importance of discouraging forum shopping is a legitimate factor in the interest-weighing analysis under Michigan law and was properly considered by the district court.  *See Farrell* and *Hall*.

Finally, plaintiffs contend the district court failed to adequately consider the substantiality of Ford's connections with Michigan.  The district court did consider Ford's extensive commercial activities in Tennessee as supporting Tennessee's "substantial interest" in having its law applied.  Yet, though Ford's commercial activities in Michigan dwarf those in Tennessee, the district court characterized Michigan's interest as "minimal."  We agree that Michigan's interests in this litigation are understated in the district court's opinion.  Yet, the conclusion that Michigan's interests are not such as to "mandate" that Michigan law be applied despite Tennessee's interests is not erroneous.  It is entirely consistent with the Michigan Court of Appeals rulings in *Hampshire*, *Farrell* and *Hall*, all of which presented similar products liability actions by non-resident plaintiffs against a Michigan automobile manufacturer, presented similar interest-weighing considerations, and resulted in applications of the foreign state's law.

## III.  CONCLUSION

Accordingly, we find no error in the district court's determination, under Michigan's choice of law rules, that plaintiffs' action is governed by Tennessee law.  There being no dispute that Tennessee's statute of repose bars the action, the summary judgment in Ford's favor is **AFFIRMED**.