OPINION
McKEAGUE, Circuit Judge.
This is a products liability action against the manufacturer of industrial manufacturing equipment used in the manufacture of residential cabinetry. The action, brought by the purchaser of the equipment and its insurer as subrogee, seeks nearly $5 million in damages for loss sustained as a result of a fire in the purchaser’s manufacturing plant. The district court, on cross-motions for summary judgment, enforced terms contained in the equipment sales agreement and dismissed the action as time-barred. On appeal, plaintiffs insist that the manufacturer of the defective equipment was not a party to the sales contract and has no right to assert the contractual limitations period in defense of their tort claims. The analysis in the district court’s opinion is thin. Yet, on due consideration of the record, we conclude the result is correct and so affirm the judgment.
I
Plaintiff Masco Cabinetry Middlefield, LLC (“Masco”), an Ohio company located *194 in Middlefield, Ohio, is in the business of manufacturing residential cabinets. On January 27, 2004, Masco, through its Kraftmaid Cabinetry division, entered into an agreement to purchase certain woodworking equipment. The agreement is finalized by a three-page document entitled “Sales Agreement,” prepared by Bob Lan-gridge of Stiles Machinery, Inc. (“Stiles”), of Grand Rapids, Michigan. Stiles is the authorized sales agent of defendant Cefla North America, Inc. (“Cefla NA”), which is a wholly owned subsidiary of, and exclusive distributor of products made by, Italian manufacturer, defendant Cefla SC.[1]
Pursuant to the Sales Agreement, Mas-co purchased a “Cefla Group Roll Coat System (UV3) ... as per Proposal # CE-3227C dated January 26, 2004.” R. 37-5, Page ID 462. The Proposal, prepared for Masco by Cefla NA and signed by its Project Engineer Dennis Eehelbarger, is twenty-one pages in length. It describes the various components of a woodworking production system to be custom designed and manufactured for Masco by Cefla SC in Italy and provides for installation and training in Middlefield by Cefla NA. The Proposal’s total price, including importation from Italy and installation in Middle-field was $2,832,819. By its terms, the Proposal is “subject to our General Conditions of Sale” and its “offer is valid for thirty (30) days.” Don Cox signed the Sales Agreement on behalf of Masco on January 27, 2004, thereby accepting Cefla NA’s Proposal, subject to a special discount of $239,819.
The Sales Agreement includes two pages of “Standard Terms and Conditions of Sale,” one applicable to Stiles and one applicable to Cefla NA. By virtue of the latter, the Sales Agreement thus explicitly includes the “General Conditions of Sale” referred to in the Proposal. The Sales Agreement also incorporates by reference terms and conditions of Masco’s National Purchasing Agreement with Stiles.
The UV3 system was installed in Mas-co’s Middlefield plant later in 2004. In October 2009, a fire occurred in the Mid-dlefield plant where the UV3 production line was housed, causing substantial damage. Masco, together with its insurer, The Insurance Company of the State of Pennsylvania as subrogee (collectively, “Mas-co”), commenced this action in October 2011, asserting negligence and products liability claims against Cefla NA and Cefla SC, and claiming damages in the amount of $4,729,092. Defendants moved for summary judgment, contending that Masco’s claims arose under the sales contract and should be dismissed as untimely because the contract bars action by Masco more than two years from the date of delivery of the equipment. The district court agreed and held that Masco’s claims, filed more than two years after delivery of the equipment, are contractually time-barred.
II
We review the summary judgment ruling de novo. Smith v. Perkins Bd. of Educ., 708 F.3d 821, 825 (6th Cir.2013). Under Rule 56, summary judgment shall be granted “if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Smith, 708 F.3d at 825. Not just any alleged factual dispute between *195 the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a genuine issue of material fact. A dispute is “genuine” only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. Id. A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. Sierra Club v. ICG Hazard, 781 F.3d 281, 284 (6th Cir.2015). A factual dispute concerns a “material” fact only if its resolution might affect the outcome of the suit under the governing substantive law — in this case, state law. Crouch v. Honeywell Int'l, Inc., 720 F.3d 333, 338 (6th Cir.2013).
Ill
Here, the Cefla defendants’ summary judgment motion was premised on the assertion that Masco’s claims, albeit nominally tort claims, “arise out of the contract.” Ordinarily, a federal court exercising diversity jurisdiction applies the choice-of-law rules of the forum state. Standard Fire Ins. Co. v. Ford Motor Co., 723 F.3d 690, 692 (6th Cir.2013). Under Ohio law, different choice-of-law rules apply, depending on whether the cause of action sounds in contract or tort. Ohayon v. Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474, 747 N.E.2d 206, 208 (2001). Hence, the court must first classify the cause of action. Id. If the action stems from a preexisting contractual relationship, then the parties had the opportunity to negotiate the law to be applied to disputes arising thereunder and the law would seek to protect the justified expectations of the parties. Id. at 209. A tortfeasor, on the other hand, who acts without a conscious regard for the legal consequences of his or her conduct, has no justified expectations to protect and different factors are considered to determine the governing law. Id.
The Cefla defendants contend that Mas-co’s claims — complaining of defectively and dangerously designed and manufactured equipment — though sounding in tort, do not arise in a vacuum; they nepessarily stem from the Sales Agreement whereby Masco purchased the equipment that defendants offered to design, fabricate and install. Defendants further contend that the parties’ justified expectations are embodied in the Standard Terms and Conditions of Sale that are made part of the contract. These standard terms provide that the contract shall be deemed to have been made in Michigan and any - action arising out of the contract shall be governed by Michigan law. They define the buyer’s remedies upon discovery of a defect, as well as limitations of the seller’s warranties. And they prescribe a two-year limitations period for claims arising out of the contract. Accordingly, defendants contend Masco’s claims should be classified as claims sounding in contract and that the parties’ contractual choice-of-law provision should be enforced. In support, they cite Gen. Elec. Co. v. Siempelkamp GmbH & Co., 29 F.3d 1095 (6th Cir.1994) (breach of contract, tort, breach of warranty, and products liability claims arising out of purchase, installation and operation of industrial machinery held to be subject to contractual choice-of-law provision); Baumgardner v. Bimbo Food Bakeries Distribution, Inc., 697 F.Supp.2d 801, 805-06 (N.D.Ohio 2010) (applying contractual choice-of-law provision to both tort and contract claims related to the contract); Bohl v. Hauke, 180 Ohio App.3d 526, 906 N.E.2d 450, 457 (2009) (recognizing that where a claim is sufficiently related to subject matter of the contract, the contractual forum-selection clause cannot be defeated simply by artfully pleading a claim not explicitly governed by the clause).
*196 Masco does not directly challenge the contention that its claims arise out of a contractual relationship reflected in the Sales Agreement, but contends the choice-of-law determination must be based on a proper understanding of the terms of the Sales Agreement. In connection with choice-of-law in particular, Masco argues that the preprinted standard terms choice-of-Michigan-law provision relied on by defendants was superseded by the terms and conditions of Masco’s National Purchasing Agreement with Stiles, expressly made applicable by handwritten note on the face of the Sales Agreement. Citing Love v. Beck Energy Corp., 2015 WL 1453338 at *3 (Ohio Ct.App. 7 Dist.), Masco contends that handwritten terms prevail over typed or preprinted terms where there is a conflict between the two.
Yet, as the district court observed, there is no conflict between the two in regard to choice of law. The terms of the National Purchasing Agreement, incorporated by handwritten reference, originally included a choice-of-law clause providing that a “purchase order shall be construed and interpreted according to the laws of the state appearing in the Buyer’s address on the face of [the] purchase order.” R. 35-2 at 9, ¶24, Page ID 327. However, that provision had undisputedly been crossed out before the National Purchasing Agreement was finalized in 2001. Id. The district court therefore concluded that there was no conflict between the terms incorporated by handwritten reference in the Sales Agreement and the standard pre-printed terms expressly made a part of the Sales Agreement. The court went on to hold that the parties’ choice-of-law provision in the standard terms was unambiguous, uncontroverted and controlling.
In this conclusion, we find no error. Nothing in Masco’s appellate arguments refutes the self-evident correctness of the ruling. Hence, although Masco’s claims sound in tort, they clearly stem from the pre-existing contractual relationship that resulted in Masco’s acquisition of the subject equipment. The claims are properly classified, under Ohio’s choice-of-law rules, as arising out of the contract. It follows that the parties’ justified expectations are best protected by enforcing their contractual choice-of-law provision. Michigan law governs.
IY
The district court then considered defendants’argument that under Michigan law, Masco’s claims are time-barred pursuant' to ¶ 11 of the standard terms in the Sales Agreement: “No suit may be brought by Buyer for any breach by Seller or any other claim arising out of this contract after two (2) years from the date of delivery of the goods covered.” R. 37-5, Sales Agreement, Page ID 464. After summarizing the relevant standards under Michigan law, the district court held as follows:
The Stiles-CEFLA Terms and Conditions’ contractual time limitation period provides that Buyer (Masco) had two years from the date of delivery of the goods to bring any cause of action regarding the goods governed by the contract. Similarly, the Stiles-Masco National Purchasing Agreement provides that Buyer (Masco) has one year from the date of delivery of the goods to bring any cause of action regarding the goods governed by the contract. Masco received the goods in 2004. Plaintiffs filed this suit on October 14, 2011, seven years after the delivery of the goods. This is well beyond either of the contractual periods.
Defendant CEFLA’s Motion for Summary Judgment is granted on the basis that Plaintiff Masco’s claims are time- *197 barred by the contractual limitations period.
R. 44, Opinion at 12, Page ID 765 (citations omitted).
Masco does not directly challenge this part of the district court’s ruling, but rather insists the Cefla defendants have no right to assert the terms of the Sales Agreement because they are not parties to it.
V
The district court summarily held that the Cefla defendants were rendered parties to the agreement by virtue of the fact that the Cefla Standard Terms and Conditions of Sale are part of the agreement. Masco points out that the Sales Agreement was prepared by Stiles on a Stiles form and that it is signed only by Masco’s Vice President of Manufacturing Operations, Don Cox. Since no representative of the Cefla defendants signed the Sales Agreement, Masco contends they have rights under the contract only if Stiles acted as their agent or if they can be deemed third party beneficiaries of the contract. As to the latter theory, Masco correctly contends that defendants have not even argued that they are third party beneficiaries. As to the former, Masco insists the record is controverted and that there is a genuine dispute as to whether Stiles acted as the Cefla defendants’ agent in finalizing the contract.
The contractual choice-of-law provision provides not only that enforcement of the contract shall be governed by Michigan law, but also that the contract shall be deemed to have been made in Michigan. Under Michigan law, a contract is formed upon offer and acceptance and a mutual assent or meeting of the minds on all essential terms. Kloian v. Domino’s Pizza L.L.C., 273 Mich.App. 449, 733 N.W.2d 766, 770 (2006). The “meeting of the minds” element is “judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective state of mind.” Id. at 771 (quoting Kamalnath v. Mercy Mem. Hosp. Corp., 194 Mich.App. 543, 487 N.W.2d 499, 503 (1992)).
The parties do not dispute that a contract was formed when Masco, by executing the Sales Agreement on January 27, 2004, accepted Cefla NA’s offer, as set forth in its Proposal, prepared for Masco (through its Kraftmaid Cabinetry division) and dated January 26, 2004.[2] The essential elements the parties mutually assented to are set forth in great detail in the Proposal, including descriptions of more than thirty components, time of delivery and installation, price and terms of payment. Nor is there any hint of argument that any party did not perform its obligations under the contract — apart from Masco’s claims that UV3 equipment defects caused the 2009 fire. The words in the Sales Agreement and Proposal make it clear that Stiles, as Cefla NA’s authorized sales agent, supervised the memorialization of Masco’s acceptance of Cefla NA’s offer, whereby a meeting of the minds was achieved: Cefla SC was obligated to fabricate the UV3 equipment components in Italy; Cefla NA was obligated to install them in Middlefield; and Masco was obligated to pay the purchase price on the agreed terms. The parties’ subsequent “visible acts” in performance of their contractual obligations further demonstrate the meeting of the minds among the parties to the contract, namely: Masco, Cefla *198 NA and Cefla SC. Nothing in the Cefla NA Proposal, accepted by Masco in the Sales Agreement, expressly obligated Stiles to do anything.
But Masco argues that the document entitled “Sales Agreement,” being a Stiles form, prepared by a Stiles employee, constitutes the contract. And under that contract, Masco argues, Stiles was the seller, not Cefla NA. Masco points out that no representative of Cefla NA or Cefla SC signed the Sales Agreement. Masco maintains that Stiles and Masco are the only two parties to the contract. In support of this understanding, Masco cites the affidavits of Cheryl Phillips, Masco’s then Director of Corporate Purchasing; and Tom Anderson, Masco’s then Director of Manufacturing Services. Both affiants attest to their understanding: (1) that the Sales Agreement was a contract between Masco and Stiles and that no Cefla entity was a party to the contract; (2) that the Sales Agreement was signed by Stiles’ representative, Bob Langridge, not by any representative of the Cefla entities; (3) that the Sales Agreement was subject exclusively to the terms and conditions of the Masco-Stiles National Purchasing Agreement; (4) that the Cefla NA Standard Terms and Conditions made a part of the Sales Agreement were not actually intended to apply; and (5) that the Sales Agreement reference to the Cefla NA Proposal is significant only as a description of the machinery purchased from Stiles.
We are not persuaded. First, Phillips’ and Anderson’s subjective understandings are entitled to little weight. Under Michigan law, the elements of contract formation are “judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective state of mind.” Kloian, 733 N.W.2d at 771 (quoting Kamalnath, 487 N.W.2d at 503). As explained above, the words and actions of the parties, objectively viewed, evidence a meeting of the minds between Masco and Cefla NA.
Second, the Sales Agreement was not “signed” by Langridge on behalf of Stiles; rather, he is identified on the form as the one who prepared the form. Moreover, the presence of Langridge’s name on the form is entirely consistent with the Proposal’s identification of him as a Stiles employee who served as Cefla NA’s Sales Representative. It is also consistent with the Agency Agreement, which defines the principal-agent relationship between Cefla NA and Stiles and designates Stiles as “Authorized Agent of Cefla [NA] for the sale of Cefla Products in the United States.” R. 38-2, Agency Agreement at 3, Page ID 598. Indeed, Cefla NA’s position on the limited nature of Stiles’ role in the transaction finds support in correspondence from Stiles’ General Counsel, Michael Callahan, to the Cefla entities in December 2002:
In the process of actively promoting Cefla products, Stiles has come across certain customers that are not as familiar with [Cefla NA] as they are with Stiles and these customers are not comfortable entering into any agreement with [Cefla NA]. Consequently, in order to keep the transaction alive, Stiles will present the customer with a Stiles Sales Agreement which the customer is willing to sign, and then Stiles submits the signed Sales Agreement to [Cefla NA] for fulfillment.
R. 37-4, Laghi Aff. at 5, Page ID 428. This correspondence at once explains why the Masco purchase order was communicated on a Stiles form; undercuts Masco’s argument about the form’s significance; and supports the conclusion that Stiles act *199 ed as Cefla NA’s agent in the transaction.[3]
Third, Masco’s argument that the Cefla standard terms were not intended to be part of the contract is belied by the fact the Sales Agreement physically includes the Cefla NA standard terms and refers to the terms of the Masco-Stiles National Purchasing Agreement, side-by-side. The Sales Agreement includes no indication that the Cefla NA terms do not apply. That is, the Cefla NA terms 'were not crossed out or modified in any way, although other preprinted terms on the form (i.e., terms of payment) were crossed out.
Fourth, the notion that the Masco-Stiles National Purchasing Agreement controls (i.e., an agreement between Masco and Stiles, incorporated in the' Sales Agreement only by handwritten reference) might have merit if Masco were proceeding against Stiles in connection with Stiles’ role in the contract, but it’s not. Rather, Masco is proceeding against Cefla NA, a party whose role in the contract is expressly set forth in its Proposal and expressly governed by other standard terms and conditions that are not only referenced, but physically attached to the Sales Agreement.
Finally, in light of all the above, the assertion that the Sales Agreement’s express reference to Cefla NA’s Proposal does not evidence Masco’s acceptance of the Proposal — prepared in great detail specifically for Masco — but represents simply a shorthand description of machinery to be purchased from Stiles — rendering Cefla NA a stranger to the contract— is simply not plausible. The notion that Cefla NA is not a party to .the contract, despite the role played by Cefla NA’s Proposal and despite the physical inclusion of Cefla’s standard terms in the Sales Agreement, is further belied by the parties’ subsequent conduct in performance of the contract. Stiles did not design, manufacture, own, sell and install the equipment; Cefla NA and Cefla SC did.
YI
Masco insists, however, that there is at least a question of fact regarding the district court’s implicit conclusion that Stiles acted as Cefla NA’s agent and that Stiles’ principal was therefore bound by and entitled to enforce the contract. This question of fact, Masco .contends, should have precluded summary judgment.
Under Michigan law, which also governs construction of the Agency Agreement between Cefla NA and Stiles, “a principal is bound by an agent’s actions within the agent’s actual or apparent authority.” James v. Alberts, 464 Mich. 12, 626 N.W.2d 158, 160 (2001). “A duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted.” In re Estate of Capuzzi, 470 Mich. 399; 684 N.W.2d 677, 679 (2004). “An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account.” Mais v. Allianz Life Ins. Co. of N. Am., 34 F.Supp.3d 754, 761-62 (W.D.Mich.2014) (quoting Meretta v. Peach, 195 Mich.App. 695, 491 N.W.2d 278, 280 (1992)). “The *200 test of whether an agency has been created is whether the principal has a right to control the actions of the agent.” Id. (quoting Meretta, 491 N.W.2d at 280). The existence of an agency relationship generally presents a question of fact, unless the material facts are not disputed. Vargo v. Sauer, 457 Mich. 49, 576 N.W.2d 656, 666 (1998).
Masco points to language in the Cefla NA-Stiles Agency Agreement itself as demonstrating that no agency relationship existed:
This Agreement shall not constitute Agent the legal representative of Principal for any purpose whatsoever, nor shall Agent hold itself out as such. Agent has the status of an independent entrepreneur, and is granted no right or authority to assume or create any obligation or liability for or on behalf of Principal or to otherwise bind Principal or to use Principal’s name other than as may be expressly authorized by Principal or permitted by Paragraph 4 above.
R. 38-2, Agency Agreement at 5, ¶ 9, Page ID 600. Masco’s reading is contrived. In a ten-page document appointing Stiles “Agent” of Cefla NA, “Principal,” and defining the authority granted Stiles as Agent, this paragraph merely makes clear that Stiles was not Cefla NA’s “legal representative” and had no right or authority other than those expressly granted. Stiles’ actions in facilitating execution of the Sales Agreement were within the bounds of the authority expressly granted under paragraph 4 of the Agency Agreement. Paragraph 9 of the Agency Agreement does not undermine the conclusion that an agency relationship existed and that Stiles acted within its authority as Cefla NA’s agent.
Masco also points to several items evidencing Stiles’ involvement in pre-contract negotiations, and as well as its post-contract invoicing of amounts payable by Mas-co. These actions, too, are not inconsistent with authority undisputedly granted Stiles under the Agency Agreement. While Stiles’ actions promoting, facilitating, and supporting the sale of the UV3 equipment may have contributed to subjective misunderstanding of Stiles’ role in the transaction, they do not undermine the well-supported conclusion that Stiles was in fact acting within its authority as Cefla NA’s agent. Masco’s argument that a genuine fact issue is presented is supported by no more than a mere scintilla of evidence, which is insufficient to undermine the summary judgment ruling.
VII
Finally, Masco contends the district court’s ruling failed to properly distinguish between the two Cefla defendants. Indeed, whereas much of the above analysis upholding the summary judgment ruling applies to Cefla NA, Cefla SC is a separate corporation. Cefla SC’s role as manufacturer of the subject equipment was integral to performance of the contract, but its role was distinct.
This issue was first raised below only after the district court had granted the Cefla defendants’ motion for summary judgment by way of a motion for relief from judgment under Fed.R.Civ.P. 60(b)(1). Masco argued that the district court made a mistake of law and fact by treating 'both Cefla entities as essentially one and the same. Whereas the materials relied on to -justify Cefla NA’s right to enforce the contractual time-bar — i.e., the Cefla Standard Terms and-Conditions of Sale, the Proposal, and the Agency Agreement — all refer to Cefla NA, none of them refers to Cefla NA’s parent corporation, Cefla SC. The district court denied relief, noting that Masco had not made the distinction in its summary judgment briefing, *201 but had itself “repeatedly referred to both entities interchangeably.” R. 55, Opinion at 3, Page ID 823. The court also took note of allegations in Masco’s amended complaint, recognizing that Cefla SC and Cefla NA were parent and wholly-owned subsidiary, who together visited Masco’s Middlefield plant in negotiating the contract and who together designed and manufactured the UV3 system. Further, the court noted that the collaborative relationship between the Cefla entities in negotiating and performing the contract is made manifest in Sales Agreement and Proposal references to shipment of the equipment from Italy, where Cefla SC was located and where the actual manufacture of the equipment would be accomplished.
We note first that Masco’s challenge to the denial of relief from judgment is not properly before us. Masco filed its notice of appeal challenging the summaxy judgment ruling before the Rule 60(b)(1) ruling was made and never filed an amended notice of appeal specifically challenging the latter ruling. See Fed. R.App. P. 4(a)(4). But even if it were properly before us, we would find the claim to be without merit, for the reasons that follow.
The court’s denial of relief under Rule 60(b)(1) is reviewed for abuse of discretion. Tyler v. Anderson, 749 F.3d 499, 509 (6th Cir.2014). Rule 60(b) relief is not designed to “allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof.” Id. The district court’s discretion in addressing such a motion is “especially broad” and our review is “limited and deferential.” Id.
Michigan law generally presumes that parent and subsidiary companies are distinct entities. Seasword v. Hilti, Inc., 449 Mich. 542, 537 N.W.2d 221, 224 (1995). In determining whether separate corporate existence should be disregarded in relation to contractual responsibilities — because the subsidiary acted as “mere instrumentality or adjunct” of the parenfi — “each case is sui generis and must be decided in accordance with its own underlying facts.” Herman v. Mobile Homes Corp., 317 Mich. 233, 26 N.W.2d 757, 761 (1947).
Under these standards, Masco falls far short of showing an abuse of discretion. For all the reasons explained by the district court, it is apparent, under the unique circumstances of this case, that the Cefla entities operated in tandem with each other to negotiate and perform obligations under the contract. Both are properly deemed bound under the terms of the contract and we see no reason to disturb the conclusion that both Cefla defendants are equally entitled to summary judgment on Masco’s claims against them.
VIII
Accordingly, the judgment of the district court is AFFIRMED.

. Cefla North America was known as Cefla Finishing America, Inc,, at the time of the sale and is successor in interest for all purposes related to this litigation. Hence, all record references to Cefla Finishing America are treated herein as referring to Cefla NA.

. Our dissenting colleague takes issue with this statement, but there simply is no dispute that Masco’s execution of the Sales Agreement gave rise to a contract. What is in dispute in this litigation is who the parties to the contract are.

. The dissent also views the Callahan letter as significánt. Yet, whereas the letter describes Stiles' role — requiring Stiles to submit the signed Sales Agreement to Cefla for fulfillment — in a manner entirely consistent with the Proposal's identification of Stiles employee Robert Langridge as mere sales representative, the dissent inexplicably construes the same language as evidence that Stiles was actually the owner and seller of the equipment — i.e., equipment that had not even been fabricated yet. The dissent’s proposed construction of the Callahan letter, like Masco’s purported subjective understanding of the Sales Agreement, is contradicted by the actual facts, i.e., the visible acts surrounding formation of the contract and its subsequent performance.